UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**Doris Perkins,**

**Plaintiff,**

**v.**

**General Motors, LLC., the GM Hourly Rate and
Employees Pension Plan and Fidelity Investments Institutional Operating
Company;
A, B, and C, the fictitious
Defendants who
were responsible for providing
accurate pension information
to the Plaintiff and who mislead the
Plaintiff as to her employment and retirement options,
and whose true identity is not
known, but will be added by amendment when assertained**

**Defendants.**

CASE NO.:

## COMPLAINT

### Jurisdictional Allegations

1. Plaintiff, Doris L. Perkins, is a Plan participant in the General Motors Hourly-Rate Employees Pension Plan (hereinafter referred to as "GM Plan.")

2. Doris L. Perkins is a citizen of the State of Alabama for more than six months preceding this action has resided in Morgan County, Alabama.

3. Plaintiff, Doris Perkins, was initially an hourly employee of the General Motors Corporation Saginaw, then the Saturn Corporation, and finally the Delphi Corporation all of which were General Motors entities from which Perkins earned pension service credits.

4. Defendant, General Motors Corporation, now General Motors, LLC., (hereinafter referred to as "General Motors" or "GM"), acts as both Plan Sponsor and fiduciary for the GM Hourly-Rate Employees Pension Plan (herein after referred to as the "GM Plan") through its authorized agent and co-fiduciary, Fidelity Investments Institutional Operating Company (herein after referred to as "Fidelity") through an entity jointly operated, managed or controlled by GM and Fidelity known as the GM Benefits and Services Center (herein after referred to as the "GM-BSC".)

5. General Motors and Fidelity, and A,B,C, act as a fiduciaries for both the GM Plan and the Delphi Hourly-Rate Pension Plan ( herein after referred to as the "Delphi Plan") and utilize or employ GM-BSC to provide pension information and plan administration services for the both GM Plan and the Delphi Plan to plan participants including the Plaintiff.

6. Plaintiff's claims arise or are otherwise related to the GM Plan and the administration thereof.  The GM Hourly-Rate Employees Pension Plan is a pension benefit plan within the meaning of 29 U.S.C. §1002(3).

7. Venue is proper in this district, and the United States District Courts have exclusive jurisdiction of actions arising under ERISA; 29 U.S.C. § 1001, *et. seq.*, for causes of action seeking appropriate equitable relief under 29 U.S.C. § 1132(a)(3), pursuant to 29 U.S.C. § 1132(g).  This action also arises under the laws of the United States, and this Court has original jurisdiction, pursuant to 28 U.S.C. § 1331.

## Factual Background

8. On or about September 30, 1985, Plaintiff began employment with General Motors in its Saginaw Division in Decatur, Alabama.  Plaintiff was an hourly worker and received pension credit service under the GM Plan.  In 1987, General Motors laid of a number of hourly workers including the Plaintiff.

9. In 1990, the Plaintiff was offered employment at the General Motors' Saturn Plant near Spring Hill, Tennessee, which she accepted.  Plaintiff earned pension credit service under the GM Plan while employed at Saturn.  In October of 1999, Plaintiff was called back into service by General Motors, this time at the Delphi Plant, located in Morgan County, Alabama.  She again earned pension service credit but this time under the Delphi Plan. The Delphi Plant made automotive parts for GM vechiles.

10. In mid- 2007, General Motors announced the closing of the Delphi Plant in Morgan County, Alabama effective August 31, 2007.

11. Defendant, Fidelity and General Motors, acting as a fiduciaries, and/or A, B, and C, provided information both in writing provided through the GM-BSC and orally, that the Plaintiff had two options regarding either her future employment General Motors or in the alternative, possible retirement. One option was to elect an early retirement benefit under the pension plans sponsored, administered or controlled by General Motors for which she would receive a combined monthly pension benefit of $2,135.32 per month until March 1, 2019 when her supplements would end. Thereafter, the Plaintiff would receive a combined monthly payment in the amount of $1084.54 until death. These figures represent a combination of the monthly pension benefits from employment at Saginaw, Saturn, and Delphi or $1,325.72 from the GM Plan; $809.60 from the Delphi Plan. Her other alternative was to transfer and accept employment at another GM facility. Employment was available at several automotive assembly plants in the south including Spring, Tennessee and Shreveport, Louisiana. The base wage at Saturn for transferring employees was approximately $28 to $30 an hour plus benefits.

12. Relying on the representations of the defendants General Motors and Fidelity through written information provided by GM-BSC, and or A, B, and C, Plaintiff elected early retirement in September of 2007 in order to receive the combined gross monthly retirement benefit of $2,135.72 until March 1, 2019 and thereafter $1084.54.

13. In a letter dated September 26, 2007. General Motors and Fidelity through the GM Benefits and Service Center advised that the amount of pension benefit would re-calculated prior to her first payment.

14. Beginning in October of 2007 and for the next 8.5 years, the General Motors Benefits and Services Center on behalf of General Motors Fidelity paid Plaintiff a gross monthly benefit of between $2051.71 and $2,159.17.

15. However, on February 4, 2016, the GM Benefits and Services Center advised Plaintiff that her monthly pension benefit had been erroneously calculated. Instead of receiving the current benefit of $2,051.17, the correct combined benefit should have been $1,735.56. According to GM Benefits and Service Center, an overpayment of pension benefits from the GM Plan totaling $32,192.25 had been paid to the Plaintiff and thus had to be repaid to the GM Plan.

16. GM Benefits & Services Center, informed Plaintiff to send her overpayment check or money order in the amount of $32,192.25 payable to

FIIOC "Fidelity Investments Institutional Operating Company" and send it to the GM Benefits & Services Center.

17. The GM Benefits and Service Center further advised that "If the payment in a lump sum is not received, beginning 04/01/2106, your monthly benefit will be reduced up to 50% until the total amount of the overpayment has been recovered.  Your benefit will be reduced to $867.77 on 04/01/2016 to recover the overpayment of $32,192.25.  Beginning 09/10/2019, you will start receiving the full benefit in the amount of $1,725.56."

18. Defendant, General Motors and Fidelity acting through the GM-BSC acting as Plan Administrator and/or fiduciary for the GM Hourly Rate Pension Plan failed to advise the Plaintiff what in fact the erroneous calculation was, the calculations that supported the "overpayment" and failed to provide any reference to any plan provisions that supported the overpayment claim. Defendants also failed to advise the Plaintiff on how she may appeal or what information the Defendants would consider as part of an appeal.

19. After receiving the letter from GM-BSC, the Plaintiff called the GM Benefits and Services Center and asked about a hardship waiver, which GM-BSC said was available and to submit documentation regarding her income and expenses.

20. On February 22, 2016, Plaintiff's designated authorized representative wrote the GM Benefits & Services Center and General Motors Company and Subsidiaries, requesting the following:

   A. An explanation as to how or why the benefit was incorrectly calculated, with reference to specific pension plan provisions;

   B. An explanation as to how the overpayment was calculated and whether there is a waiver due to hardship form or criteria under the pension plan;

   C. A copy of the hourly rate employees pension plan that was in effect at the time of Ms. Perkins' retirement in 2007;

   D. A copy of the summary plan description for the hourly rate employees pension plan that was in effect at the time of Ms. Perkins' retirement; and

   E. Notification as to Ms. Perkins' appeal timeframe and where she must send her appeal.

21. There was response to Plaintiff's request.

22. On April 6, 2016, the Plaintiff, again, asked for a copy of the summary plan description for the pension plan in effect at the time the alleged overpayment began and an explanation of how the overpayment was calculated, with reference to specific plan provisions.  Plaintiff advised that she was not able to obtain the summary plan description on the website because she had been locked out and denied access.

23. On April 6, 2016, the Plaintiff also appealed the decision to reduce her monthly pension benefit and recover the overpayment. Plaintiff based her appeal on hardship and provided documentation as to her monthly expenses and income; Plaintiff also claimed that she still didn't concede that there was an overpayment until she received proof of how it was calculated; Plaintiff claimed that GM or its agents were solely responsible for the inaccurate information and leading Plaintiff to elect the monthly retirement benefit; the Defendant's had breached their fiduciary duty to the Plaintiff to provide accurate information; Plaintiff had paid Federal and State income taxes on her retirement benefits and that it was inequitable and a breach of GM's fiduciary responsibility to accurately inform plan participants of their monthly amount; and that the statute of limitations and/or laches prevented the enforcement of the alleged overpayment.
24. Defendants, General Motors and the GM-BSC failed to respond to the Plaintiff's appeal and failed to provide any documents pursuant to her request, including the summary plan description.
25. In April of 2016, the General Motors Benefits and Services Center acting on behalf of the General Motors, Fidelity and or the GM Plan began reducing

Plaintiff's monthly combined pension benefit in order to recover the alleged overpayment.

26. On July 12, 2016, Plaintiff's representative called the GM Benefits & Services Center in an attempt to find out why Plaintiff's requests were being ignored. The GM Benefits and Services Center advised that they did not recognize Ms. Perkins' designated authorized representative. Therefore, that same day, Plaintiff, through her designated authorized representative and attorney, sent yet another correspondence to Defendants, asking them to decide her appeal; (i.e. waive the overpayment due to financial hardship and not to reduce her benefit because of misleading communications and statute of limitation and laches). Plaintiff, yet again, requested documents pertaining to the Plan and calculations so that she could supplement her appeal. Her designated authorized representative informed GM that they could contact the Plaintiff directly.

27. Plaintiff, through her designated authorized representative, requested this information no later than July 22, 2016, or else she would be forced to file a federal lawsuit against the appropriate GM entities.

28. On September 12, 2016, the GM Benefits and Services Center advised that overpayment calculation was $23,026.99 but failed to explain the reduction or any calculations.

29. On September 26, 2016, the GM-BSC sent Plaintiff a 2016 Summary Plan Description for the GM Plan (not the 2007 as requested nor the GM Plan) and a partial letter addressing her pension elections from 2007. No explanation as to the error in over payment was provided by any of the named defendants and none of the concerns or issues raised by the Plaintiff were addressed.

30. Plaintiff has exhausted to the extent required administrative remedies under the GM Plan or such remedies are unavailable or would be futile given that no defendant timely responded to Plaintiff's requests; defendants failed to provide basic information on the alleged error so that the Plaintiff could address the alleged overpayment nor did defendants provide plan documents to assist the plaintiff in pursuing what administrative remedies might be available, if any.

### Count I

31. Plaintiff, readopts and re-alleges the factual averments, as if, fully set out herein.

32. Defendants, General Motors and Fidelity operating through the GM-BSC and or A,B, and C are fiduciaries under the GM Plan and have a fiduciary

duty under 29 U.S.C. 1104 to the Plaintiff to provide truthful and accurate information to Plaintiff regarding her retirement options which she relied on to her determent.

33. In September of 2007, Plaintiff elected an early retirement option and expected to receive a monthly gross pension benefit of $2,135.72 and gave up substantial employment opportunities at other GM plants to her determinant.

34. The GM Plan or GM-BSC as agent for GM Plan, General Motors and Fidelity paid the Plaintiff the benefits as promised until April of 2016 when the Defendants decided to reduce the combined monthly benefits due to its error and its misrepresentation in order to recover an alleged overpayment.

35. Defendant, General Motors and Fidelity acting through its the GM Benefits and Services Center, and or A, B, and C provided false, misleading or otherwise inaccurate information to the plaintiff about her retirement benefit amount under the combined pensions plan previous referenced at the time of when the Plaintiff had to make an election between continued employment

at another GM plant or electing early retirement. The defendants, GM and Fidelity and A,B, and C have breached their fiduciary duty to the Plaintiff.

36. Pursuant to 29 U.S.C. 1132(a)(3), the Plaintiff is entitled to appropriate equitable relief to remedy the defendants actions including:

   a. Against Defendant, General Motors and Fidelity and/or A,B,and C, the remedy of surcharge to compensate/reimburse the Plaintiff for lost wages and benefits she would have received had she transferred to another GM Plant or to restore to the amount of monies wrongfully taken or deducted by the Defendants to recovery the alleged overpayment.
   b. Against the GM Plan, General Motors and Fidelity, an injunction from reducing monthly plan benefits as promised based on the statute of limitations, latches or hardship and to otherwise restore to the plaintiff the benefits erroneous benefits collected due to date.
   c. Against all defendants, an award of reasonable attorney's fees and costs as permitted under 29 U.S.C. 1132(g).

Submitted this the 19th day of January, 2018.

/s/R. Willson Jenkins
R. Willson Jenkins (JEN009)

**OF COUNSEL:**
R. Willson Jenkins, P.C.
R. Willson Jenkins, Attorney for
Doris Perkins
201 South Court Street, Suite 450
Florence, AL 35630
256-766-4840- T
256-483-4733 - F